UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN POBLANO (A-Number: 221-477-645),<br><br>                    Petitioner,<br><br>          v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY,<br><br>                    Respondent. | Case No.  1:26-cv-2070-DJC-JDP<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Juan Poblano entered the United States at an unknown time and was detained by ICE in 2025.  Since his detention, petitioner has not been provided a bond hearing because the government has determined that he is subject to mandatory detention.  Petitioner, now proceeding with counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241.  For the following reasons, I recommend that the petition be granted and that petitioner be afforded a bond hearing.

**Background**

Petitioner entered the United States at an unknown time.  ECF No. 6-1 at 2.  Petitioner alleges that he has lived in the country for twelve years.  ECF No. 1 at 19.  There is no allegation or evidence that, prior to his present detention, petitioner has been detained by immigration officials.[1]  There also is no indication that petitioner has applied for asylum.

---

[1] In 2005, petitioner was arrested by a border patrol agent and granted voluntary return to Mexico.  ECF No. 6-1 at 2.  There is no indication that petitioner was released from custody into the United States.  Instead, it appears that petitioner returned to Mexico at that time, and then he re-entered the United States without inspection sometime around 2014.  *See* ECF No. 1 at 19.

1

On November 20, 2025, petitioner was arrested in Florida with aggravated battery of a pregnant person. ECF No. 6-1 at 3. On December 5, 2025, the state attorney's office elected not to file any criminal charges against petitioner. ECF No. 15-1 at 35. Nonetheless, petitioner remained in local custody until December 7, 2025, when he was detained by ICE. ECF No. 6-1 at 2.

**Procedural History**

On March 16, 2026, petitioner, initially proceeding pro se, filed a petition for writ of habeas corpus. ECF No. 1. The court referred the matter to me the following day. ECF No. 4. On March 26, 2026, respondent filed an answer. ECF No. 6. On that same day, petitioner filed a motion for the appointment of counsel, which I granted on April 7, 2026; appointed counsel appeared on April 14, 2026. *See* ECF Nos. 7, 10, and 11. In keeping with the parties' stipulation, petitioner filed a reply on May 14, 2026. *See* ECF Nos. 13-15.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Respondent argues that petitioner's detention is mandatory under 8 U.S.C. § 1226(c). ECF No. 6 at 3. Under this section, the attorney general "shall take into custody" any noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny,

2

shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person."[2]  8 U.S.C. § 1226(c)(1)(E)(ii).  The term "serious bodily injury" has the meaning given such term "in the jurisdiction in which the acts occurred."  *Id.* § 1226(c)(2).  In Florida—where petitioner was arrested and charged—a "serious bodily injury" is "a physical condition which creates a substantial risk of death, serious personal disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  Fla. Stat. § 790.155(1)(b).

Here, respondent argues that petitioner is subject to mandatory detention under section 1226(c)(1)(E) because he was arrested for aggravated battery of a pregnant person under Florida Statute § 784.045(1)(b).  *See* ECF No. 6 at 3; ECF No. 6-2 at 4.  Respondent does not provide the police report or any other document that details the alleged crime; instead, respondent's argument relies solely on the fact that petitioner was arrested under section 784.045(1)(b).  *See id.*  This section provides in relevant part:

> (1)(a) A person commits aggravated battery who, in committing battery:
>
> 1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or
>
> 2. Uses a deadly weapon.
>
> (b) A person commits aggravated battery if the person who was the victim of the battery was pregnant at the time of the offense and the offender knew or should have known that the victim was pregnant.

Fla. Stat. § 784.045.

While the statute uses the term "great bodily harm," Florida courts have held that "[t]here is no significant difference between the terms 'great bodily harm' and 'serious bodily injury.'"  *See id.*; *Mendenhall v. State*, 999 So. 2d 665, 667 (Fla. Dist. Ct. App. 2008), *approved*, 48 So. 3d 740 (Fla. 2010).  There is no information in the record indicating whether petitioner was arrested under section 784.045(1)(a)(1)—battery that causes "great bodily harm, permanent disability, or

---

[2] The statute also requires that the noncitizen be "inadmissible" under 8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7).  8 U.S.C. § 1226(c)(1)(E)(i).  Because petitioner is "present in the United States without being admitted or paroled," he is "inadmissible" under § 1182(a)(6)(A). *See* 8 U.S.C. § 1182(a)(6)(A)(i).

3

permanent disfigurement"—or under section 784.045(1)(a)(2)—battery using "a deadly weapon." *See* Fla. Stat. § 784.045(1)(a). It is possible that petitioner's alleged crime resulted in "great bodily harm" that, under Florida law, qualifies as "serious bodily injury." *See id.*; *Mendenhall*, 999 So. 2d at 667. However, it is also possible that his alleged crime did not result in serious bodily injury; indeed, petitioner could have been arrested under this section for having allegedly committed battery with "a deadly weapon." *See* Fla. Stat. § 784.045(1)(a). Accordingly, without more information, I cannot determine whether petitioner's arrest was for a crime resulting in a serious bodily injury.

However, this inquiry need not be resolved because, before petitioner was detained by ICE, the state attorney's office elected not to file any criminal charges against him. *See* ECF No. 15-1 at 35. Courts in this District have held that due process does not permit mandatory detention under section 1226(c) where a prosecutor elects not to bring charges. *See S.E. v. Noem*, No. 1:26-cv-0356-DAD-SCR, 2026 WL 206085, at *3 (E.D. Cal. Jan. 27, 2026) (ordering bond hearing for noncitizen detained under section 1226(c) where no charges were filed after arrest); *Brandon Y. M. v. Andrews*, No. 1:25-cv-1962-SKO, 2026 WL 125234, at *4 (E.D. Cal. Jan. 16, 2026) (same). I agree with other courts that have addressed this issue and find that section 1226(c) does not apply where a prosecutor declines to file charges. Thus, even if petitioner were subject to section 1226(c) following his arrest—a proposition that, as noted, is inconclusive based on the present record—he was no longer subject to this section when the state attorney's office elected not to file any charges against him, which occurred *before* petitioner was detained by ICE. Accordingly, at no point during his present detention has petitioner been subject to mandatory detention under section 1226(c).

Instead, because petitioner was detained in the interior of the United States, his detention is governed by 8 U.S.C. § 1226(a). *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). "Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022). Petitioner, however, has been denied this statutory right.

Given this finding, I must determine whether the appropriate relief is release or a bond hearing.  Petitioner requests a bond hearing or, alternatively, release.  ECF No. 1 at 17.  Respondent does not address this issue.  *See* ECF No. 6.

Courts in this Circuit have ordered both forms of relief.  Some courts have found that a bond hearing is the proper remedy.  *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025) ("The Court finds that the specific harm Rodriguez alleges—that he is unlawfully barred from receiving a bond hearing on the merits—is remedied by granting his request for a bond hearing under Section 1226(a) and enjoining Defendants from denying bond on the basis that he is detained under Section 1225(b)(2).").  Other courts have held that release is the proper remedy.  *See Feng v. Lyons*, No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) ("Provision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right.").

Here, I find that a bond hearing is appropriate.  The harm suffered by petitioner—not receiving the bond hearing to which he is statutorily entitled—is remedied by providing that hearing.  *See Rodriguez*, 779 F. Supp. 3d at 1263.  Moreover, *Feng* is distinguishable from the instant action.  There, the court found "no indication . . . of prima facie evidence that Petitioner could be found to be a risk of flight or a danger to the community." *Feng*, 2026 WL 472635, at *1.  The same cannot be said here.  As noted, petitioner was arrested in November 2025 for aggravated battery of a pregnant woman.  ECF No. 6-1 at 3.  Petitioner indicates that the victim of this alleged crime was his wife, and he states that she "removed all charges" against him sometime after his arrest.  *See* ECF No. 1 at 19.  Petitioner also states that a restraining order was entered against him as a result of this alleged crime, though neither party indicates whether that order is still in effect.[3]  *See id*.

Under these circumstances, although the state attorney's office elected not to file criminal charges, I find that petitioner's alleged criminal activity constitutes "prima facie evidence that

---

[3] Petitioner's wife wrote a letter to the court stating that, if petitioner were to be released, she wants him to return to their home in Florida.  ECF No. 15-1 at 22.

5

[p]etitioner could be found to be a risk of flight or a danger to the community." *See Feng*, 2026 WL 472635, at *1.  While this evidence might prove insufficient for the immigration judge to deny bond, it is sufficient to support the finding that "due process is satisfied if [p]etitioner is provided with a post-deprivation bond hearing." *See Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL 607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution") (citing *J.S.H.M.*, 2025 WL 2938808, at *15-16).

## Conclusion

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Within five days of this order, petitioner (A-Number: 221-477-645) be afforded a bond hearing before a neutral arbiter in accordance with 8 U.S.C. § 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

3. Respondent be ordered to file a status report, within five days of the bond hearing, confirming that the hearing occurred.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:    May 25, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE